MIAMI VALLEY PAPER, LLC, :
         : NO. 1:05-CV-00702
 Plaintiff,    :
         : **OPINION AND ORDER**
         :
 v.       :
         :
         :
LEBBING ENGINEERING &  :
CONSULTING GMBH,   :
         :
 Defendant.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (doc. 37), Defendant's Response (doc. 45), and Plaintiff's Reply (doc . 52), as well as Defendant's Motion for Summary Judgment (doc. 44), Plaintiff's Response (doc. 51), and Defendant's Reply (doc. 53). For the reasons stated herein, the Court **DENIES** the parties' motions in regards to their respective breach of contract claims, **DENIES** Defendant's motion for summary judgment on Plaintiff's breach of warranty claims, and **DENIES** Plaintiff's motion for summary judgment on Defendant's claim for reformation due to mutual mistake. The Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's negligent misrepresentation, fraudulent inducement, and unjust enrichment claims, and **GRANTS** Plaintiff's motion for summary judgment on Defendant's claim for fraudulent inducement.

**I. Background**

The facts of this case, as taken from the pleadings and motions, are as follows. Plaintiff, Miami Valley Paper, LLC, ("MVP" or "Plaintiff") is a Delaware company with its principal place of business in Franklin, Ohio (doc. 23). MVP is in the business of manufacturing and marketing high quality paper, packaging, and converted paper products (Id.) Defendant, Lebbing Engineering & Consulting GMBH ("Lebbing" or "Defendant"), is a German limited liability company with its principal place of business in Germany (Id.). Lebbing is in the business of assisting companies with the upgrading and relocating of paper winders and converters (Id.).

On March 24, 2003, MVP approached Lebbing requesting a machine performance review at the MVP facility in Franklin, Ohio (Id.). Lebbing visited the facility and issued a May 2, 2003 report recommending MVP overhaul one of its paper winding machines, the Langston Winder (doc. 44). MVP elected to replace the Langston Winder and enlisted the assistance of Lebbing to locate a replacement (doc. 23). Lebbing issued a May 22, 2003 report in which it recommended MVP purchase a 1987 Cameron Winder ("Winder"), stating "the machines just got out on to the market and those are a very good deal. The owner is selling them because of bankrubsy [sic]. Therefore we should act fast on this" (doc. 44). Negotiations took place regarding the sale by Thomas Lebbing on behalf of Lebbing and by MVP's Chief Technology Officer Nabil Nasser ("Nasser") and its Plant Manager Michael Flaitz ("Flaitz")

(Id.). Both Nasser and Flaitz testified that there were numerous discussions about the shafted and duplex nature of the 1987 Cameron Winder, and that from the pictures of the machine provided by Lebbing, it was clear that this winder was shafted and duplex (Id.).

On June 14, 2003, MVP issued a purchase order containing specifications calling for a winder featuring a shaftless design, stating that the "unwind and rewind are shaftless" and "machine shall be configured so that one person shall operate it to specifications..." (doc. 23). The purchase order was drafted by MVP President Steven Schulman ("Schulman"). Both Nasser and Flaitz testified that the shaftless specification was a mistake (doc. 44). In response to the purchase order, Lebbing sent a June 17, 2003, confirmation repeating the "shaftless" language, stating that the Winder met the specifications in the MVP purchase order, but that there were three minor differences between the machine to be sold and the machine described in the purchase order (Id.).

On June 23, 2003, MVP sent Lebbing its modified purchase order which reiterated the shaftless specifications desired for the Winder, accepted the minor modifications which were the subject of Lebbing's June 17, 2003 correspondence, and noted an increase in the purchase order to account for an additional transformer to be provided by Lebbing (doc. 52). On June 24, 2003, Lebbing sent MVP a document titled "Order Confirmation" with payment instructions, which once again repeated the "shaftless" specifications (Id.).

The parties dispute whether this document confirmed and accepted MVP's purchase order, or whether the document served as a counteroffer (doc. 45). On June 25, 2003, Lebbing sent a fax to MVP stating that it would pay the down payment to the third party to secure the deal on the winder, and also inquired whether MVP would like to purchase a crane (<u>Id</u>.). Lebbing argues that by adding the crane, which MVP agreed to purchase June 26, 2003, this document modified its June 24, 2003 counteroffer (<u>Id</u>.). MVP argues that its June 26, 2003 agreement to purchase the crane was an amendment to the contract (doc. 23).

Lebbing purchased the 1987 Cameron Winder from the third party in Scotland and shipped the machine to the United States (doc. 44). On July 16, 2003, Lebbing sent a packing list and shipping documents to MVP which indicated that the machine included shafts (<u>Id</u>.). On August 15, 2003, the 1987 Cameron Winder arrived at MVP's facility (<u>Id</u>.). MVP inspected and took photographs of the machine and afterwards made the second of three installment payments for the purchase price on September 5, 2003 (<u>Id</u>.). On October 20, 2003, MVP President Steven Schulman contacted Lebbing notifying them that the Winder did not conform to the contract specifications because it was a duplex and shafted winder (doc. 23).

After purchasing the 1987 Cameron Winder, MVP cut its workforce by 25-33% and eliminated an entire shift of workers (doc.

44).  MVP has never purchased another machine to replace the Langston Winder or Cameron Winder, but instead shifted its production to an existing machine (Id.).  From October 2003 until April 2004, MVP unsuccessfully attempted to sell the Cameron Winder (doc. 23).  MVP ultimately sold the Winder at auction for $1,000.00 to an affiliate, and paid a $1,000.00 auctioneer's fee (Id.).

Plaintiff filed an initial Complaint on October 28, 2005, and on January 25, 2006, filed a Second Amended Complaint, alleging six causes of action: 1) breach of contract; 2) breach of express warranty; 3) breach of warranty of fitness for a particular purpose; 4) unjust enrichment; 5) fraudulent inducement; and 6) negligent misrepresentation (doc. 23).  Subsequently, Defendant filed a Motion to Dismiss Plaintiff's Complaint on April 5, 2006, which this Court denied (doc. 21).  The Court also denied Defendant's Motion for Partial Judgment on the Pleadings filed on July 5, 2006 (doc. 19).

Now before the Court is Plaintiff's Motion for Partial Summary Judgment, requesting the Court grant summary judgment on Plaintiff's breach of contract claim, and against Defendant on all counts (doc. 37), as well as Defendant's Motion for Summary Judgment, seeking dismissal of each of Plaintiff's claims (doc. 44).

## II. Applicable Legal Standard

Although a grant of summary judgment is not a substitute

-5-

for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also

LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781,

784 (6th Cir. 1994).  Accordingly, the non-movant must present
"significant probative evidence" demonstrating that "there is [more
than] some metaphysical doubt as to the material facts" to survive
summary judgment and proceed to trial on the merits.  Moore v.
Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see
also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

        Although the non-movant need not cite specific page
numbers of the record in support of its claims or defenses, "the
designated portions of the record must be presented with enough
specificity that the district court can readily identify the facts
upon which the non-moving party relies." Guarino, 980 F.2d at 405,
quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th
Cir. 1989)(internal quotation marks omitted).  In contrast, mere
conclusory allegations are patently insufficient to defeat a motion
for summary judgment.  See McDonald v. Union Camp Corp., 898 F.2d
1155, 1162 (6th Cir. 1990).  The Court must view all submitted
evidence, facts, and reasonable inferences in a light most
favorable to the non-moving party. See Matsushita Elec. Indus. Co.
v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H.
Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc.,
369 U.S. 654 (1962).  Furthermore, the district court may not weigh
evidence or assess the credibility of witnesses in deciding the
motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

        Ultimately, the movant bears the burden of demonstrating

that no material facts are in dispute.  See <u>Matsushita</u>, 475 U.S. at

587.  The fact that the non-moving party fails to respond to the

motion does not lessen the burden on either the moving party or the

Court to demonstrate that summary judgment is appropriate.  See

<u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55

(6th Cir. 1991).

**III. Analysis**

**A. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff's motion requests summary judgment on

Plaintiff's breach of contract claim, as well as on each of

Defendant's three counterclaims.  The Court will address each

argument in turn.

**1. Plaintiff's breach of contract claim**

Plaintiff's breach of contract claim is based upon the

United Nations Convention on Contracts for the International Sale

of Goods ("the CISG").  There are several critical differences

between the law governing contract formation under the CISG and the

more familiar principles of the Uniform Commercial Code (doc. 45).

First, the CISG applies the common law concept of mirror image, and

states in Article 19:

> (1) A reply to an offer which purports to be an
> acceptance but contains additions, limitations or other
> modifications is a rejection of the offer and constitutes
> a counter-offer.
>
> (2) However, a reply to an offer which purports to be an
> acceptance but contains additional or different terms
> which do not materially alter the terms of the offer

constitutes an acceptance, unless the offeror, without undue delay, objects orally to the discrepancy or dispatches a notice to that effect. If he does not so object, the terms of the contract are the terms of the offer with the modifications contained in the acceptance.

(3) Additional or different terms relating, among other things, to the price, payment, quality and quantity of the goods, place and time of delivery, extent of one party's ability to the other or the settlement of disputes are considered to alter the terms of the offer materiality.

CISG Art. 19. Second, the CISG has no statute of frauds, and does not require contracts for sale to be concluded in writing, instead allowing a contract to be "proved by any means, including witnesses." CISG Art. 11. Finally, the CISG contains no parol evidence rule, but allows the Court to consider statements or conduct of a contracting party to establish, modify, or alter the terms of a contract. CISG Art. 8(2).

In its Motion for Partial Summary Judgment, Plaintiff argues that an express contract between the parties was created on June 24, 2003, when Lebbing sent a letter to MVP confirming the acceptance of MVP's June 14, 2003 Purchase Order (doc. 37). Plaintiff argues that this Purchase Order issued to Defendant clearly stated that the Winder was to be shaftless and simplex, and that an express contract was formed through the Defendant's letter to Plaintiff confirming the acceptance of the Purchase Order with these specifications (Id.).

In Plaintiff's Reply Memorandum in Support of its Motion for Partial Summary Judgment, a different date is proposed for when

the express contract was formed between MVP and Lebbing (doc. 52). Plaintiff argues that a binding contract was formed on June 23, 2003, when MVP sent Lebbing its modified Purchase Order accepting the minor modifications which were the subject of Lebbing's June 17, 2003 correspondence to MVP (Id.). MVP argues that Lebbing's June 24, 2003 letter to MVP served as a written confirmation of MVP's modified Purchase Order of June 23, 2003 (Id.).

Despite the different arguments for when the contract was formed between MVP and Lebbing, it is Plaintiff's position that these writings are the best evidence of the intentions of the parties in entering this contract (doc. 37). In support of its position, Plaintiff cites a decision from the Eleventh Circuit Court of Appeals, Mcc-Marble Ceramic Ctr., Inc. v. Ceramica Nuova D'Agostino, S.P.A., 144 F.3d 1384, 1391 (11th Cir. 1998) for the proposition that objective evidence, in this case the written contract between MVP and Lebbing, should be relied upon, pursuant to CISG Article 8(2), except in cases where both parties actually intend not to be bound by a written contract (doc. 52). It is the Plaintiff's position that any pre-contract discussions between MVP employees and Lebbing regarding the desired specifications of the Winder should not have any bearing on the specifications set forth in the clear contractual language (Id.).

It is undisputed by both parties that the machine Lebbing delivered to MVP on August 15, 2003 was duplex and shafted, rather

than simplex and shaftless (doc. 37). Plaintiff argues that when it learned that the Winder was non-conforming, it notified Lebbing, and therefore complied with the CISG's notification requirements (<u>Id</u>.). Plaintiff contends that it is entitled to summary judgement on its breach of contract claim because the Winder delivered by Defendant was shafted and duplex, and therefore a non-conforming good (doc. 37).

In response to Plaintiff's Motion for Partial Summary Judgment, Defendant first takes issue with Plaintiff's argument that a contract was formed for a shaftless Winder on June 24, 2003 via Lebbing's correspondence with MVP confirming MVP's June 12, 2003 Purchase Order (<u>Id</u>.). Defendant argues these two documents do not constitute an offer and acceptance under the CISG, because each of the documents modify earlier offers and thus are deemed rejections under the mirror image principle of CISG Article 19(1) (<u>Id</u>.). Specifically, Defendant claims that its June 24, 2003 correspondence is a counteroffer to MVP's June 12, 2003 Purchase Order because it contains terms and conditions materially different to the June 12, 2003 document (<u>Id</u>.). Additionally, Lebbing argues that under CISG Article 16(1), it properly modified its June 24, 2003 counteroffer on June 25, 2003 by proposing to add a crane to the deal (<u>Id</u>.). Defendant argues that the two parties did not finalize the terms of their contract until after July 1, 2003 when the parties agreed that the crane was to be part of the deal (<u>Id</u>.)

In further opposition to Plaintiff's Motion for Partial Summary Judgment, Defendant states that parol evidence, specifically the testimony of two of Plaintiff's employees, Nasser and Flaitz, who allegedly conducted the negotiations, demonstrates that the parties agreed to purchase and sell the shafted Winder that was delivered (Id.). Defendant argues that both men were aware that the Winder was in fact shafted and duplex, and had conducted numerous discussions concerning the specifications of the Winder prior to its purchase (Id.). Further, Defendant contends that both men have testified that MVP mistakenly issued Purchase Orders containing the shaftless and simplex specifications(Id.).

Defendant also argues that Plaintiff's Motion should fail because Plaintiff accepted the Winder by making partial payments despite knowing the machine was shafted and duplex (Id.). Defendant claims that Plaintiff immediately inspected the Winder upon delivery, and then failed to reject the Winder as a non-conforming good (Id.) Instead of rejecting the Winder, Plaintiff made the second of three installment payments on September 16, 2003, thus accepting the Winder (Id.). Defendant argues that under CISG Article 49(1), MVP cannot revoke its acceptance of the Winder because it cannot show that the delivery of the shafted Winder constitutes a fundamental breach of a contract (Id., citing CISG Art. 49(1)(a)). Under CISG Article 25, a breach is not "fundamental" unless a buyer is deprived of all rights expected

under the contract (doc. 45). Defendant argues that MVP has not been deprived of its contractual expectations by pointing to employee testimony stating that MVP expected a shafted and duplex machine and that the tendered machine could be used by MVP (Id.).

In Plaintiff's Reply Memorandum in Support of its Motion for Partial Summary Judgment, MVP responds to a number of the issues raised by Defendant's Motion in Opposition. As noted above, MVP sets forth a different argument for when the contract was formed between MVP and Lebbing for the Winder (doc. 52). Plaintiff claims that Defendant's reliance upon parol evidence is misplaced because the terms of the written contract are clear as of June 24, 2003 (Id.). Plaintiff also argues that the discussions between MVP employees and Lebbing concerning MVP's purchase of the Winder have no bearing on the issues presented by the written contract, in part because neither employee had authority to issue a purchase order without approval from MVP's President (Id.).

Plaintiff also objects to Defendant's argument that it accepted the delivered machine and failed to provide proper notice of a possible non-conformity (Id.). First, Plaintiff distinguishes the facts of the case relied upon by the Defendant, Chicago Prime Packers, Inc. v Northam Food Trading Co., 320 F. Supp. 2d 702 (N.D.Ill. 2004), aff'd, 2005 U.S. App. LEXIS 9355 (7th Cir. May 23, 2005), from the facts of the present matter. Unlike the situation in Chicago Prime Packers, where the court imposed a deadline of a

-14-

period of days upon the buyer of fresh meat to notify the seller of a non-conformity, Plaintiff argues that the condition of the Winder would not change in a matter of days, and thus expedited notification was not required (doc. 52).  Plaintiff also argues that under Article 39, a buyer must give notification of a non-conformity "within a reasonable time after he has discovered it" (Id.).  Plaintiff argues that this provision was satisfied by notifying Lebbing "within a matter of weeks after receiving the machine" (Id.).

Plaintiff asserts that despite Defendant's claims, the delivery of the shafted Winder constituted a fundamental breach for numerous reasons (Id.).  According to the Plaintiff, operating a shafted Winder requires additional manpower, equipment, maintenance, and space, while operating a shaftless Winder could be accomplished by one person (Id.).

Reviewing the arguments of both parties, the Court finds there exists a genuine issue of material fact which precludes summary judgment on the parties' breach of contract claims.  First, both parties admit that a contract was formed, and indeed the Court believes this to be the case.  However, there remains a dispute of fact as to when the contract was formed, and as to the terms of the contract.  As noted, Plaintiff sets forth two different dates for when the contract was formed.  Defendant refutes the dates set forth by the Plaintiff, and instead argues that the contract was

formed in mid-July 2003. Both parties set forth persuasive arguments in favor of their respective positions, and this Court believes such arguments cannot be resolved short of trial.

The main disagreement between the two parties concerns whether the contract set forth an agreement for a shafted Winder, or a shaftless Winder. Under Articles 8 and 11 of the CISG, witness testimony may be considered to determine the terms of the contract and this consideration presents issues of fact which must be determined at trial. First, Defendant argues that Nasser and Flaitz admitted that they were solely responsible for negotiating and ordering a shafted Winder, as MVP intended. However, Plaintiff argues that these two employees did not have the authority to purchase the machine without the approval of MVP's President, who has testified that MVP intended to purchase a shaftless Winder. Therefore, instead of clarifying the written documents between the two parties, the witness testimony simply sets forth conflicting allegations.

A second disagreement between the two parties includes whether the contract included an order for the Winder and collateral items, such as the crane, or whether the contract simply called for the purchase of the Winder. In conclusion, genuine disputes as to material facts exist concerning the date that the contract was formed, the terms of the contract, and the allegations set forth by witness testimony to the contract's formation.

Second, the Court finds that there is a dispute as to whether Plaintiff properly provided notice of its objection to the delivery of the shafted Winder to Defendant, and if so, whether the delivery of a shafted Winder constitutes a fundamental breach of contract. Once again, both parties have set forth persuasive arguments in favor of their positions, and these arguments must be heard by a jury in order to determine their veracity.

First, this Court notes that the determination of what time period is reasonable for a party to alert the other party of an alleged non-conformity is fact sensitive, and must be determined on a case by case basis. <u>Chicago Prime Packers,</u> 320 F. Supp. 2d at 712. In making this determination, one court considered "a number of factors, such as the complexity of the machinery, the method of delivery, the need for training and ongoing repairs with respect to the machinery, and the skill of the plaintiff's employees." <u>Shuttle Packaging Sys., L.L.C. v. Tsonakis</u>, 2001 U.S. Dist. LEXIS 21630, No. 01 C 691, 2001 WL 34046276 (W.D.Mich. Dec. 17, 2001). The question of whether it was reasonable for the Plaintiff to wait approximately two months before tendering notice to Defendant of the alleged non-conformity must be fully examined by a jury, in light of all circumstances of this specific case.

Finally, genuine issues of material fact exist as to whether the delivery of the shafted Winder constitutes a fundamental breach of contract under the CISG. Plaintiff sets

forth numerous disadvantageous associated with the operation of a shafted Winder, as well as numerous advantageous it hoped to enjoy with the purchase of a shaftless Winder.  Defendant argues that Plaintiff intended to purchase a shafted Winder, and nonetheless, a shafted Winder could be operated successfully by Plaintiffs. These arguments must be considered in front of a jury in order to determine whether the delivery of the shafted Winder deprived the Plaintiff of his rights under the contract.  The evidence and testimony both parties set forth is conflicting, and creates a genuine issue of material fact making summary judgment not proper on either parties' breach of contract claim.

### 2. Defendant's Counterclaim for Reformation due to Mistake

Plaintiff next moves for summary judgment on Defendant's second counterclaim, that the contract should be reformed due to mutual mistake (doc. 37).  Plaintiff argues that, at best, the contract was the result of a unilateral mistake on Defendant's part, and that Defendant can produce no evidence that Plaintiff was operating under any mistaken belief when the parties contracted (Id.).  Further, Plaintiff argues that even if there were evidence of mutual mistake, reformation is not a remedy recognized under the CISG (Id., citing CISG Art. 81).

In response, Defendant argues that the Plaintiff's employees, Nasser and Flaitz, who negotiated the contract confirm that the shaftless specification was a mutual mistake and further,

that the doctrine of mutual mistake allows for reformation of a contract (doc. 45).

After analyzing both parties' arguments, the Court Defendant's position well-taken. First, this Court finds that a genuine issue of fact exists as to whether the mistake in the shipment of the shafted Winder was Defendant's alone, as Plaintiff urges, or mutual, as Defendant contends. On the one hand, there is evidence set forth in the written documents exchanged between the parties that indicates that Plaintiff conveyed its intention to have a shaftless Winder delivered. This evidence tends to show that the mistake was unilateral. On the other hand, there is evidence that Plaintiff's employees who participated in the negotiations of the contract believed that Plaintiff intended to purchase a shafted Winder. This evidence would tend to show that the mistake was mutual. Therefore, neither party is entitled to summary judgment on the issue.

Second, assuming that a mutual mistake exists, Plaintiff's argument that the CISG does not authorize a court to reform a contract is not persuasive. First, this Court acknowledges that "[t]he caselaw interpreting and applying the CISG is sparse" <u>Calzaturificio Claudia v. Olivieri Footwear Ltd.</u>, 96 Civ. 8052, 1998 U.S. Dist. LEXIS 4586, *13 (S.D.N.Y. Apr. 7, 1998). However, at least one federal case acknowledges that the CISG recognizes the doctrine of mistake. In <u>Mitchell Aircraft Spares,</u>

<u>Inc. v European Aircraft Service</u>, 23 F. Supp.2d 915, 922 (N.D. Ill. 1998), the court refused to grant summary judgment on the question of whether a unilateral or bilateral mistake was involved in a contract dispute. The court recognized that there were valid arguments on both sides of the issue, and therefore held that summary judgment was inappropriate. <u>Id</u>. This Court makes the same finding.

### C. Defendant's Counterclaim for Fraud

Finally, Plaintiff requests summary judgment on Defendant's third counterclaim, which alleges Defendant is entitled to rescission, reformation, and/or damages because it was allegedly fraudulently induced to enter into the contract with Plaintiff (doc. 37). Under Ohio law, a plaintiff must establish the following elements to support a claim of fraudulent inducement: (1) a representation or a concealment where there is a duty to disclose; (2) which is material; (3) made falsely with either knowledge of the falsity or utter disregard for the truth; (4) with the intent to mislead; (5) justifiable reliance upon the misrepresentation or concealment; and (6) damages proximately caused by the misrepresentation or concealment. <u>Glazer v. Lehman Brothers, Inc</u>., 394 F.3d 444, 459 (6th Cir. 2005); <u>Information Leasing Corp. v. Chambers</u>, 152 Ohio App. Ed 715, 740 (Ohio Ct. App. 2003).

Plaintiff argues that the Purchase Order contained no

misrepresentation as to any material fact, and that because Defendant had the opportunity to review the language in the Purchase Order before the contract was made, Defendant can not prove justifiable reliance (doc. 37). Further, Plaintiff contends that Defendant can produce no evidence of Plaintiff's intent to defraud given the plain language of the Purchase Order (Id.). Finally, Plaintiff points to language in the Purchase Order stating that all amendments to the Purchase Order must be made in writing, arguing that Defendant had no right to rely on anything other than the language contained in the Purchase Order (Id.).

In response, Defendant argues that it can in fact produce evidence of fraud (doc. 45). Specifically, Defendant points to the testimony of an employee of the Plaintiff who stated he knew the machine was shafted before the contract documents were exchanged (Id.). Further, Defendant argues that because Plaintiff never used the machine delivered, or any other machine, this is evidence that Plaintiff never intended to accept the goods delivered by Defendant (Id.). Lastly, Defendant argues that it can prove reliance based on the testimony of witnesses to the negotiations that stated the intent of the parties was to purchase a shafted machine all along (Id.).

The Court finds Plaintiff's arguments well-taken. Defendant's allegations that Plaintiff never intended to purchase a shaftless machine are simply too tenuous in the face of written

documents which set forth Plaintiff's intentions to purchase a shaftless Winder.  Further, the argument that Plaintiff placed the shaftless specification into the agreement due to a downturn of productivity at Plaintiff's facility is entirely too speculative to support an allegation of fraud.  Therefore, summary judgment on Defendant's claim is appropriate.

**B. Defendant's Motion for Summary Judgment**

Defendant also moves for summary judgment in favor of its breach of contract claim and on all claims brought by Plaintiff (doc. 44).

**1. Plaintiff's Breach of Contract and Breach of Express Warranty Claims**

In Count I of the Second Amended Complaint, Plaintiff alleges that Defendant breached a sales contract by failing to deliver a 1987 Cameron Winder that met contractual warranties and by failing to provide installation services (doc. 23).  In Count II, Plaintiff alleges that Defendant breached a contract by failing to deliver a 1987 Cameron Winder that met express warranties set forth in the parties' contract (<u>Id</u>.).  Defendant argues that both of these claims fail, making the same arguments in favor of summary judgment on these claims as those made in opposition to Plaintiff's motion on this same claim. For the reasons stated in Section III(A)(1) of this Order, the Court finds that genuine issues of material fact exist which precludes a finding of summary judgment

for either party as to the breach of contract claims.

### 2. Plaintiff's Breach of Warranty for Particular Purpose

Plaintiff's claim for breach of warranty for a particular purpose is governed by CISG Article 35(3), which states in relevant part:

> (2) Except where the parties have agreed otherwise, the goods do not conform with the contract unless they are:
>     (a) are fit for the purposes for which goods of the same description would ordinarily be used;
>     (b) are fit for any particular purpose expressly or impliedly made known to the seller at the time of the conclusion of the contract, except where the circumstances show that the buyer did not rely, or that it was unreasonable for him to rely, on the seller's skill or judgment...
>
> (3) The seller is not liable under paragraphs (a) to (d) of the preceding paragraph for any lack of nonconformity of the goods if at the time of the conclusion of the contract the buyer knew or could not have been aware of such lack of conformity.

<u>Id</u>.

Defendant argues that this claim fails because Plaintiff was aware of any alleged nonconformity at the time the parties concluded the contract (doc. 44). Defendant points to the testimony of Plaintiff's employees, Nasser and Flaitz, involved in the negotiations as evidence of this knowledge (<u>Id</u>.). According to the Defendant, under CISG Art. 35(3), this knowledge is a complete defense to a breach of warranty claim (<u>Id</u>.). Defendant further argues that MVP's claim should fail because MVP had knowledge that the Winder required a crane for one person to operate the machine,

and therefore MVP cannot argue that the machine cannot be run by one person (Id.). Finally, Defendant contends that this claim should fail because Plaintiff's witnesses have testified that the Winder can be used in production, and is therefore fit for the purposes which MVP ordered it (Id.).

In response, Plaintiff first argues that there is sufficient evidence to support MVP's position that it was not aware that the Winder was shafted and duplex (doc. 51). Next, Plaintiff asserts that its expert has testified that the Winder cannot be efficiently and productively operated by one person, that the Winder is too large for the space MVP had reserved for it, and that therefore the Winder is not fit for MVP's purposes (Id.).

After reviewing both parties' arguments, this Court finds that summary judgment on Plaintiff's warranty claim is not appropriate because Plaintiff has set forth sufficient evidence to allow a jury to make the determination whether the delivery of the shafted Winder constituted a breach of warranty. Numerous factual issues defeat Defendant's motion for summary judgment on the claim. First, evidence supports Plaintiff's argument that it was not aware that the machine it ordered was shafted, contrary to the allegations allegedly made by two MVP employees. As a result, this question must be determined by a jury. Second, Plaintiff offers evidence that the Winder could not be used at its facility, and offers expert testimony to such point. This evidence is contrary

to Defendant's assertion that the machine can be used in production. Because there are genuine issues of material fact, Defendant's motion for summary judgment on Plaintiff's breach of warranty for a particular purpose claim is denied.

### 3. Plaintiff's Claims for Fraudulent Inducement and Negligent Misrepresentation

Next, Defendant argues that it is entitled to summary judgment on Plaintiff's claim in Count V for fraudulent inducement and the claim in Count VI for negligent misrepresentation (doc. 44). As previously stated, under Ohio law, a plaintiff must establish the following elements to support a claim of fraudulent inducement: (1) a representation or a concealment where there is a duty to disclose; (2) which is material; (3) made falsely with either knowledge of the falsity or utter disregard for the truth; (4) with the intent to mislead; (5) justifiable reliance upon the misrepresentation or concealment; and (6) damages proximately caused by the misrepresentation or concealment. Glazer v. Lehman Brothers, Inc., 394 F.3d 444, 459 (6th Cir. 2005); Information Leasing Corp. v. Chambers, 152 Ohio App. Ed 715, 740 (Ohio Ct. App. 2003). A claim for negligent misrepresentation requires the same elements as a claim for fraudulent inducement with the exception of the third element, which a plaintiff can meet in a negligent misrepresentation claim by showing the defendant made the representation "without reasonable care." Delman v. City of

<u>Cincinnati</u>, 41 Ohio St. 3d 1, 4 (Ohio 1989).

Plaintiff argues that there is sufficient evidence to create genuine issues of material fact on its fraudulent inducement and negligent misrepresentation claims (doc. 51). As evidence of misrepresentation, Plaintiff points to Defendant's statement from the May 22, 2003 proposal that "[t]he machines just got out on the market and those are a very good deal. The owner is selling them because of bankrubsy [sic]. Therefore we should act fast on this" (<u>Id</u>.). Plaintiff argues these statements were false, that facts show that the owner was not in bankruptcy, and that the machine was not a good price because the real market value of the machine was approximately $20,000 rather than the $57,000 which Defendant paid to procure the machine (<u>Id</u>.). Plaintiff asserts that it is reasonable to conclude that Defendant either intentionally or recklessly made representations that were false, and that MVP incurred damages as a result of its justifiable reliance upon those misrepresentations (<u>Id</u>.).

Reviewing the arguments of both parties, this Court finds that summary judgment is appropriate for Defendant on Plaintiff's fraudulent inducement and negligent misrepresentation claims. Plaintiff's argument that it was induced to purchase the Winder because Defendant represented that it could obtain a "good deal" on the machine because the previous owner was in bankruptcy is unavailing. "A statement of opinion or belief such as occurs in

'puffing' generally cannot constitute a misrepresentation." <u>Kondrat v. Morris</u>, 118 Ohio App. 3d 198, 208 (Ohio Ct. App. 1997). The Defendant's representation that the Winder's price was a good deal is merely an opinion of the seller which cannot establish the necessary element of material misrepresentation to support a fraudulent inducement or negligent misrepresentation claim.

#### 4. Plaintiff's Claim of Unjust Enrichment

Defendant next argues that Plaintiff cannot assert an implied contract claim for unjust enrichment (in Count IV) because Plaintiff admits that there is an express contract, and Ohio law is clear that an express contract eliminates any basis to assert an implied contract for unjust enrichment (doc. 44, citing among others, <u>Hughes v. Oberholtzer</u>, 162 Ohio St. 330 (Ohio 1954)).

In response, Plaintiff argues that unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute, and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality (doc. 51, citing <u>Resource Title Agency v. Morreale</u>, 314 F. Supp. 2d 763, 772 (N.D. Ohio 2004)).

Defendant made this same argument in its Motion for Judgment on the Pleadings and there this Court held "it is the opinion of the Court that a plaintiff may set forth both causes of action as alternative theories, pursuant to Fed. R. Civ. P. 8(e)(2)" (doc. 31, citing <u>United States v. Boeing Co.</u> 184 F.R.D.

107, 112 (S.D. Ohio 1998)).  While the Court declined to dismiss Plaintiff's claim for unjust enrichment earlier in the proceedings, the Court finds that it is now appropriate to dismiss the claim. Both parties have admitted, and the Court has found, that there is no dispute that the parties had an express contract for the sale of the Winder.  As the Court stated in its previous Order "it is well-established that Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." <u>Ulmann v. May</u>, 147 Ohio St. 468 (1947).  Further, as set forth above, this Court finds that dismissal of the Plaintiff's fraudulent inducement and negligent misrepresentation claims is appropriate.  Plaintiff has acknowledged that its unjust enrichment claim may survive only if the Court finds in its favor on the fraudulent inducement claim, which the Court declines to do for the reasons set forth above.  Therefore, dismissal of Plaintiff's claim for unjust enrichment is appropriate.

## IV. Conclusion

For the foregoing reasons, For the reasons stated herein, the Court **DENIES** the parties' motions in regards to their respective breach of contract claims, **DENIES** Defendant's motion for summary judgment on Plaintiff's breach of warranty claims, and **DENIES** Plaintiff's motion for summary judgment on Defendant's claim for reformation due to mutual mistake.  The Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's negligent

misrepresentation, fraudulent inducement, and unjust enrichment claims, and GRANTS Plaintiff's motion for summary judgment on Defendant's claim for fraudulent inducement.

SO ORDERED.

Dated: March 26, 2009      <u>s/S. Arthur Spiegel</u>
                                        S. Arthur Spiegel
                                        United States Senior District Judge